The complainants are members of the bar, and bring this suit against The Westfield Trust Company and Louis Lawrence as substituted administrators and trustees of the estate of Marie D. Norton, deceased; Louis Lawrence individually; Solon Lathrop Norton Lawrence; Alexander Kilough Lawrence; Stuart Norton Lawrence; Robert Louis Lawrence and *Page 390 
Marie Depew Lawrence, heirs and next of kin of Marie D. Norton, deceased, for discovery and accounting and for a decree in such amount as may be found to be due them under a retainer agreement which reads as follows:
"May 25, 1923. Messrs. Edwards, Murphy Minton 26 Liberty Street, New York City
Mark Townsend Esq., Sip Bergen Avenues, Jersey City, N.J.
Gentlemen: —
We, as Administrators with the Will annexed, of the Estate of Marie D. Norton, deceased, do hereby retain you as our attorneys to bring any actions or proceedings which may be necessary or convenient in your judgment to test the validity of the trust provisions in the Will of Louis Keller, deceased, formerly of Union County, New Jersey and to represent us in our said capacity or individually in any action or proceeding brought for that purpose in any jurisdiction, and we agree to pay you as your sole compensation for services rendered in and about this matter thirty per cent (30%) of any recovery obtained either as the result of any action or proceeding or through compromise, settlement or otherwise, which said sum shall be in addition to and not in place of any allowance which may be made to you or either of you as attorneys and counsellors by any Court in any action or proceeding. It is specifically understood that the Estate of Marie D. Norton and we, in our said capacity, shall be liable for no fees or disbursements in the event that no recovery shall be had, nor shall we be responsible to you for any disbursements incurred. Any disbursements incurred by you in the necessary conduct of such proceedings will be paid by Mr. Louis Lawrence personally and not by the Estate of Marie D. Norton.
We also agree not to compromise any claim which we may have in this matter in our said capacity as such Administrators nor to accept any sums in settlement thereof without first notifying you of our intention so to do, together with the time when and the place where the same is to be completed.
 Very truly yours, THE ESTATE OF MARIE D. NORTON THE WESTFIELD TRUST COMPANY, SUBSTITUTED ADMINISTRATOR. JOSEPH R. CONNEL,
 President. LOUIS LAWRENCE."
Before the retainer agreement was prepared by complainants, conferences took place from time to time. In one of such *Page 391 
conferences between Mr. Edwards of the firm of Edwards, Murphy 
Minton and Mr. Lawrence, substituted administrator of the Norton estate, after the subject-matter was under consideration for several months Mr. Edwards said "I have decided to go to court and break the will wide open on a contingency."
The retainer agreement was then prepared by complainants and executed, in which complainants undertook "* * * to bring any actions or proceedings which may be necessary or convenient in your [their] judgment to test the validity of the trust provisions in the Will of Louis Keller, deceased," and it was agreed that the estate "shall be liable for no fees or disbursements in the event that no recovery shall be had, * * *."
Accordingly, complainants as solicitors on behalf of the administrators of the Marie D. Norton estate, on September 15th, 1923, filed a bill of complaint in this court, in which the several provisions of the will and the parties in interest are set forth, and concluded said bill with the prayer that the fourth, fifth and sixth clauses thereof be construed: "that it be established by the decree of this court that the trust ortrusts which said Louis Keller sought to invest in the executors of his Will be declared void and freed of any and all charges against the same; or in the event that said trust is not held void in toto, that it be established what part isvoid and the terms, charges and conditions attaching to any part found valid; that it may also be established by such decree that said Louis Keller died intestate as to any or all of suchtrust property, or so much of his property as this court may find as being covered or sought to have been covered by trustprovisions void or partially void * * *." (Italics mine.)
The file in its entirety in that proceeding is evidence in this cause, together with the briefs of the respective counsel in the case. In their brief complainants argued that the trust provisions of the Keller will "violate the rule against perpetuities;" that "a trust invalid in part may be invalid in whole," c., and in their reply brief concluded in this language: "The entire trust provisions of the will are void, as *Page 392 
the central and dominant scheme of the testator [Keller] upon which all portions of these trust provisions are based contemplated an unlawful continuance of the Social Register in violation of the rule against perpetuities. There is accordingly an intestacy as to the entire rest, residue and remainder of the testator's estate. Only the first three paragraphs of the will are valid."
The conclusion is inescapable from the plain wording of the retainer agreement, the pleadings and briefs submitted, that the sole purpose and undertaking was to have the trust provisions of the will of Louis Keller declared invalid and that the complainants and their clients (defendants here) so understood.
The case was heard and the opinion of Vice-Chancellor Fielder is reported in 97 N.J. Eq. 140; 128 Atl. Rep. 791, and affirmed by the Court of Errors and Appeals in 99 N.J. Eq. 435;131 Atl. Rep. 924. The Vice-Chancellor held that the trust provisions of the will do not violate the rule against perpetuities. In that proceeding the complainant Mark Townsend, Jr., as solicitor for the complainants was allowed a fee of $3,500.
But the bill in this cause alleges that by the final decree in the suit to test the validity of the trust created in the will of Louis Keller, it was decreed that Marie D. Norton was an heir-at-law and next of kin of said Louis Keller, and as such had a vested interest in "one half of one quarter" of the residuary estate created by his will, subject to the income thereof being paid to one Josephine de Ronje for life; that Marie D. Norton died and her interest passed to the certain of the other named defendants; that Marie D. Norton also had a vested interest in "one-half of one quarter" of the said residuary estate, subject to the income to be paid for life to Annie Townsend Ashmore, and that the interest of Marie D. Norton upon her death also passed to the defendants; that the appraised value of the Keller estate at the time the decree was entered approximated one million dollars and that the share of defendants after the death of Josephine de Ronje and Annie Townsend Ashmore (life tenants) was approximately $250,000 of which complainants under the retainer *Page 393 
agreement are entitled to 30% or $75,000; that de Ronje is alive and receiving the income, while Ashmore died June 10th, 1932, whereupon defendants become entitled to receive the principal of one-half of one-quarter of the residuary estate; that distribution in part has been made to defendants of about $25,000, and hence complainants pray accounting and decree for their share under the retainer agreement.
Treating with this phase of the bill of complaint we read that under the sixth paragraph of Keller's will subdivision (a) he bequeathed to his cousin, Josephine de Ronje for life, one-fourth of the income of his estate, and by subdivision (c) of the same paragraph, to Annie Townsend Ashmore, during her life, one-fourth of the income of the estate. The will is silent as to the disposition of each of these one-fourths of corpus. As to thecorpus following the death of the life tenants, the testator made no testamentary disposition, and in the absence thereof he died intestate as to it, and such of it as consisted of real estate vested on Keller's death to his heirs-at-law of the whole blood, and if he had none of the whole blood, one-half of such real estate vested on his death in Mrs. Norton, his sister of the half blood, and the other half of the said real estate vested in Charles K. Beekman, nephew of the half blood, and Catherine Huger, niece of the half blood, in equal shares. R.S. 3:3-7.
As to the personal property making up the two-fourths dedicated to the benefits of the life tenants, the title was in the executors and trustees for the purposes of the trust created for the benefit of the life tenants with the ultimate right of property on their death to Keller's next of kin, Mrs. Norton, one-half, Charles K. Beekman and Catherine Huger, niece and nephew of the half blood, the other one-half under our statute of distribution which has been construed to the effect that the half blood and the whole blood share equally, and in the absence of one class, the other takes all. (R.S. 3:26-6); Mulford v.Mulford, 42 N.J. Eq. 68; 6 Atl. Rep. 609; Skellenger'sExecutors v. Skellenger's Executor, 32 N.J. Eq. 659; Dildine
v. Dildine, 32 N.J. Eq. 78.
It does not appear to me that complainants contracted with the substituted administrators concerning the omission in *Page 394 
Keller's will to make final distribution of those two-fourths part of the corpus set apart for the life tenants. Certainly complainants, learned in the law, knew that an express omission in the will to provide for the final disposition of the corpus
automatically created intestacy, and so it required no adjudication or decree to establish Keller's intestacy as to the two-fourths part of his estate now sought to be subjected to the 30% fee. It can hardly be said that the complainants' solicitors made any recovery in that respect under their retainer agreement for that question as I view this case was not at all considered when the retainer agreement was prepared and concluded between the parties. Our statutes of descent and of distribution define and fix definitely where that property was to go.
The defendants urge the defense of laches.
The decree in the suit brought under the retainer agreement was entered September 8th, 1925, and affirmed by the Court of Errors and Appeals on February 1st, 1926, and this suit instituted nearly fourteen years later on February 9th, 1939, during all of which time complainants stood by in uncomplaining silence in a matter involving a fee of approximately $75,000.
Complainants explain the delay in a two-fold manner. They say it was occasioned because of sympathy for Mr. Lawrence whom they say was experiencing financial difficulty in supporting and educating his family. What that had to do with the Norton estate and those interested therein, one of whom is still an infant, I do not understand. Nextly, they say no recovery could be had until assets were received by the Norton estate from the Keller estate since there would be "no way to determine what complainants were entitled to under the agreement except to measure same by the amount of assets received from the Keller Estate." Nevertheless complainants were at liberty to bring an action for a declaratory decree (R.S. 2:26-68) declaring their rights and status under the agreement. While it is true that such decree is not enforceable by execution or other final process, yet relief based thereon, could be granted, whenever necessary or proper, on application to a court having jurisdiction to grant such *Page 395 
relief. McCrory Stores Corp. v. S.M. Braunstein, Inc.,102 N.J. Law 590; 134 Atl. Rep. 752.
However, laches involves something more than mere delay. There must be delay for a length of time, which, unexplained and unexcused, is unreasonable under the circumstances, and which has been prejudicial to the defendants. The fact that in the meanwhile Mr. Edwards and Mr. Connolly, the president of the Westfield Trust Company who signed the retainer agreement, both died, resulted in no prejudice by way of loss of evidence. But this unseeming delay is significant. It is a circumstance which I feel strongly indicates the lack of faith on the part of complainants that their present contention and the right which they now urge for discovery and accounting could be properly founded upon their contingent retainer agreement.
I will advise decree dismissing the bill of complaint.