9 A.3d 1086 (2010)
417 N.J. Super. 378
In the Matter of the Trusts to be Established in the Matter of the ESTATE OF Margaret A. FLOOD, Deceased.
Docket No. A-1643-09T1.
Superior Court of New Jersey, Appellate Division.
Submitted December 8, 2010.
Decided December 29, 2010.
*1087 Paula T. Dow, Attorney General, attorney for appellant New Jersey Department of Human Services, Division of Medical Assistance and Health Services and Division of Developmental Disabilities (Melissa H. Raksa, Assistant Attorney General, of counsel; Dianna Rosenheim, Deputy Attorney General, on the brief).
Law Office of Donald D. Vanarelli, attorneys for respondent John Flood, Administrator of the Estate of Margaret A. Flood (Donald D. Vanarelli, of counsel; Mr. Vanarelli and Whitney W. Bremer, Westfield, on the brief).
Before Judges CUFF, FISHER and FASCIALE.
The opinion of the court was delivered by
FISHER, J.A.D.
The record in this probate matter demonstrates the decedent had engaged in estate planning but never executed a will by the time of her death. Notwithstanding, the judge utilized the doctrine of probable intent in permitting the establishment and funding of supplemental benefit trusts for decedent's two disabled daughters. Because the doctrine of probable intenta rule of will constructioncannot be used to create a testamentary disposition when a decedent dies intestate, we reverse.
The facts are relatively simple and undisputed. Margaret A. Flood was survived by four children. Two of her children are disabled and the beneficiaries of supplemental security income and Medicaid programs; one of those two receives special residential services and other benefits from the Division of Developmental Disabilities (DDD). When judgment was entered, DDD's statutory lien exceeded $1,000,000; the lien has since grown at a rate in excess of $300 per day.
Margaret first considered estate planning following her husband's death in 2004. Margaret's daughter-in-law, who is an attorney, certified that Margaret was concerned about protecting the inheritances of her disabled daughters from any obligations to reimburse the governmental entities that had provided benefits and services. Although in late 2004 Margaret expressed these concerns and her desire to retain an attorney, it appears she did not consult an attorney until March and April 2008. Thereafter, Margaret's plans were interrupted first by the illness of one of her daughters and then by an injury she sustained in April 2008. Margaret died on May 24, 2008, with an estate valued at $480,000. She never executed a will or testamentary trust.
The estate's administrator filed this action, seeking the court's authorization to establish and fund the trusts he claims would have been created had Margaret's death not intervened. The matter came before the trial court on the return date of the initial order to show cause; DDD opposed the relief sought.
The facts, as briefly outlined above, were not disputed. The parties proceeded on the assumption that the decedent possessed the unfulfilled intent to create supplemental benefits trusts for her two disabled daughters. The bone of contention instead turned on whether a court may animate such an intention in the complete absence of a will or testamentary trust. *1088 The trial judge rejected DDD's arguments and held that the doctrine of probable intent could reach that far.
We conclude that the trial judge's well-intended decision was based on a mistaken understanding of the applicable law. In the absence of a testamentary disposition, Margaret's estate passed by way of the laws of intestacy, and her children's interests vested immediately upon her death. N.J.S.A. 3B:1-3. The doctrine of probable intentutilized here to do what Margaret failed to do in lifehas no application in the absence of a will. Certainly, as the administrator argues, the doctrine of probable intent has evolved; it now represents, as our Supreme Court has held, a "broader and more liberal approach to will construction" than the prior insistence on formalistic results. In re Estate of Burke, 48 N.J. 50, 63, 222 A.2d 273 (1966).
The doctrine permits the reformation of a will in light of a testator's probable intent by "searching out the probable meaning intended by the words and phrases in the will." Engle v. Siegel, 74 N.J. 287, 291, 377 A.2d 892 (1977). Moreover, extrinsic evidence may be offered not only to show an ambiguity in a will but also, if an ambiguity exists, "to shed light on the testator's actual intent." Wilson v. Flowers, 58 N.J. 250, 263, 277 A.2d 199 (1971). The outer reach of the doctrine's evolution is likely the Court's decision in In re Estate of Branigan, 129 N.J. 324, 330-31, 335, 609 A.2d 431 (1992), where the doctrine was used to reform a will to take advantage of changes in federal estate tax laws that had occurred after execution of the will and after the death of the testator.[1]
Although there has been a progression from an era that exalted and enforced more formalistic limits, the doctrine of probable intent has never been applied to create a testamentary disposition when the decedent failed to execute a will. It "cannot be used to write a will that the testator did not write." In re Estate of Gabrellian, 372 N.J.Super. 432, 441, 859 A.2d 700 (App.Div.2004), certif. denied, 182 N.J. 430, 866 A.2d 986 (2005); accord Burke, supra, 48 N.J. at 64, 222 A.2d 273 (holding that even when a decedent has executed a will, "a court may not .. . conjure up an interpretation or derive a missing testamentary provision out of the whole cloth"); In re Cook, 44 N.J. 1, 12, 206 A.2d 865 (1965) (Hall, J., dissenting) (recognizing that "[a] wider outlook and reliance on probable intention should never be permitted... to work out a will which a testator did not make")[2]; Chrisman v. Cornell Univ., 1 N.J.Super. 486, 489, 62 A.2d 157 (Ch.Div.1948) (holding that "[t]he function of a court is to construe a will so as to give effect to the intention of the testator, but the court can not make a new will for him").
*1089 In essence, the doctrine of probable intent is a rule of construction or interpretation and, therefore, presupposes an existing testamentary disposition. See, e.g., In re Estate of Payne, 186 N.J. 324, 335, 895 A.2d 428 (2006) (holding, "[i]n interpreting a will, our aim is to ascertain the intent of the testator"); In re Estate of Dawson, 136 N.J. 1, 9, 641 A.2d 1026 (1994) (instructing that, in considering application of the testator's probable intent, a court must "look first to the testator's will"); Branigan, supra, 129 N.J. at 331, 609 A.2d 431 (viewing the doctrine of probable intent as "[a] leading principle governing will construction"); Cook, supra, 44 N.J. at 6, 206 A.2d 865 (recognizing that the doctrine of probable intent is a principle to be applied "in the interpretation of wills"); Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 564-65, 178 A.2d 185 (1962) (defining the doctrine of probable intent as the device by which a court will "ascertain[] the subjective intent of the testator ... [by giving] primary emphasis to his dominant plan and purpose as they appear from the entirety of his will when read and considered in light of the surrounding facts and circumstances ..."). Where there is no will there can be no will construction.[3]
The judgment under reviewissued to protect the inheritances of two of Margaret's daughters from the immediate reach of reimbursement lienscannot stand because it is anchored to a rationale at odds with our existing jurisprudence, which precludes application of the doctrine of probable intent to create a testamentary disposition where none existed.[4]
Reversed.
NOTES
[1] In 2004, the Legislature enacted N.J.S.A. 3B:3-33.1, thereby adding weight to the established common law tradition of reforming instruments to conform to the probable intention of testators. Like the jurisprudence developed by our courts, this statute and other related provisions expressly require the existence of a will or other testamentary instrument before permitting utilization of rules of interpretation. See, e.g., N.J.S.A. 3B:3-33.1(a) (declaring that "[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions ..."); N.J.S.A. 3B:3-33.1(b) (declaring that "[t]he intention of a settlor as expressed in a trust, or of an individual as expressed in a governing instrument, controls the legal effect of the dispositions therein ...").
[2] The Court later recognized that its majority opinion and Justice Hall's dissenting opinion in Cook differed on "the nature and quality of the evidence relied upon to establish the intent found," not on the descriptions of the doctrine of probable intent or its reach. Burke, supra, 48 N.J. at 64 n. 3, 222 A.2d 273.
[3] Kimley v. Whittaker, 63 N.J. 235, 306 A.2d 443 (1973), upon which the administrator relies, is inapposite. There, the Court interpreted a will in which the testator devised all her property to her husband, made no alternative disposition if he predeceased heras he did and "for reasons [she] care[d] not to disclose," made no provision for her daughter or her daughter's children. Id. at 237, 306 A.2d 443. In considering the will's language, the Court concluded that the testator did not intend to incorporate the laws of intestacy if her devise to her husband lapsed. Id. at 240, 306 A.2d 443. The matter at hand does not involve a will disposition that lapsed and created a potential for the application of the intestacy laws but rather the utter absence of a willa markedly different circumstance.
[4] We lastly observe that the administrator has relied on an order of another probate judge that purportedly supports his position, and DDD has referred us to another order of another judge that appears to have reached a contrary conclusion. The decisions of trial judges are, of course, not binding on us. We recognize, however, that probate judges develop an expertise in the area that might have been illuminating had either party provided us with copies of those judges' decisions. In the absence of any understanding of the underlying reasoning, the parties' references to these trial court rulings have no value to us.