**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1876-18T1

IN THE MATTER OF THE
ESTATE OF LOIS N. DECONCA,
        Deceased.

_____

Argued January 9, 2020 – Decided March 27, 2020

Before Judges Alvarez and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. P-000101-18.

William G. Wright argued the cause for appellant Alzheimer's Disease and Related Disorders Association, Inc. (Capehart & Scatchard PA, attorneys; William G. Wright, on the briefs).

Denis Francis Driscoll argued the cause for respondent Alzheimer's New Jersey, Inc. (Inglesino Webster Wyciskala & Taylor LLC, attorneys; Lisa Deitsch Taylor, Denis Francis Driscoll, and Owen T. Weaver, of counsel and on the brief).

PER CURIAM

Lois N. DeConca's April 11, 2014 will was admitted to probate November 13, 2017. The co-executors, including David H. Coates, thereafter filed a

verified complaint seeking the court's direction regarding which charitable organization was the intended beneficiary of a revocable trust: The National Alzheimer's Association (AA), headquartered in Chicago, Illinois, Greater New Jersey Chapter, or Alzheizmer's New Jersey, Inc. (ANJ). Judge Katie A. Gummer, P.J. Ch., rendered a decision on November 29, 2018, after conducting a bench trial in which she found that the intended beneficiary was ANJ. We affirm.

The relevant revocable trust language states:

> 12. FIVE PERCENT (5%) to ALZHEIMER'S ASSOCIATION, NEW JERSEY, 400 Morris Avenue, Suite 257, Denville, New Jersey 07834.

During the trial, among others, Coates testified as did Kenneth Zaentz, currently the Chief Executive Officer of ANJ. The judge found both to be credible witnesses.

Zaentz testified ANJ was created after leaving an earlier affiliation with the National Alzheimer's Association at a particular Denville address. After disaffiliating with the national organization, ANJ filed a certificate of incorporation on December 16, 2015, under the new name. Previously, the affiliated organization at that Denville address was known as the Alzheimer's Disease and Related Disorder Association, Inc., Greater New Jersey Chapter.

A-1876-18T1

After detailed examination of the documents admitted in evidence, and consideration of the testimony of all the witnesses, the judge held that ANJ was "not a new organization . . . but really had been the New Jersey Alzheimer's entity."

DeConca created the revocable trust in October 2000, named the recipient of certain funds held in trust as the "Alzheimer's Association," and specified a Chicago address. That beneficiary designation survived amendments to the estate documents until 2009, when DeConca revised the revocable trust to gift to "Alzheimer's Association New Jersey Chapter . . . Denville . . . ." Although no such entity then existed by that name, the "Alzheimer's Disease and Related Disorders Association, Inc., Greater New Jersey Chapter" was located at the Denville premises, and in 2015 became ANJ. At that time, the national organization did not have a New Jersey chapter.

Decedent's contacts with the national organization ended in March 2007. Her last donation to the national organization was made in March 2009. Only then did she amend the reference in her trust documents to Denville. She had actually obtained the address from the national office.

Thus, Judge Gummer concluded DeConca probably intended to limit her gift-giving to New Jersey residents. Since ANJ "is more focused on New Jersey

3

concerns than the national entity even [as compared with] the now local chapter of the national entity[,]" the distribution should be made to ANJ.

On appeal, AA raises the following points:

> I. THE TRIAL COURT'S CONCLUSION THAT MRS. DECONCA'S PROBABLE INTENT WOULD HAVE BEEN FOR THE BEQUEST TO GO TO [ANJ] IS NOT SUPPORTED BY ADEQUATE, CREDIBLE, AND SUBSTANTIAL EVIDENCE.
>
> A. Doctrine of Probable Intent.
>
> B. The trial court did not employ the analysis that it outlined.
>
> C. There is not adequate, substantial and credible evidence below for the trial court's conclusion.
>
> D. The Trial Court's conclusion did not turn on credibility.
>
> II. A NEW TRIAL IS NOT NECESSARY; THIS COURT HAS THE POWER TO RENDER JUDGMENT.

N.J.S.A. 3B:3-33.1 delineates the doctrine of probable intent. The statutory focus, whether of the construction of dispositions in a will or trust documents, is to implement "[t]he intention of a testator . . . ." The doctrine of probable intent has "a 'broader and more liberal approach to will construction

. . . ." In re Estate of Flood, 417 N.J. Super. 378, 381 (App. Div. 2010) (quoting In re Estate of Burke, 48 N.J. 50, 63 (1966)).

"The doctrine of probable intent is not applicable where the documents are clear on their face and there is no failure of any bequest or provision." In re Estate of Gabrellian, 372 N.J. Super. 432, 443 (App. Div. 2004). "[P]resumed probable intent must be applied sparingly and only where necessary to give the effect to the intent of the will or trust without varying the terms of the document." Id. at 441.

In instances where intent of the will or trust is unclear, "[t]he doctrine permits the reformation of a will in light of a testator's probable intent by 'searching out the probable meaning intended by the words and phrases in the will.'" Flood, 417 N.J. Super. at 381 (quoting Engle v. Siegel, 74 N.J. 287, 291 (1977)). "Moreover, extrinsic evidence may be offered not only to show an ambiguity in a will but also, if an ambiguity exists, 'to shed light on the testator's actual intent.'" Ibid. (quoting Wilson v. Flowers, 58 N.J. 250, 263 (1971)).

Interpretation of a term within a trust is confined to "the four corners of the document and the language therein . . . ." In re Trust Under Agreement of Vander Poel, 396 N.J. Super. 218, 226 (App. Div. 2007). "To that end, in interpreting a will, courts in this State endeavor to 'ascertain the intent of the

5                                                                              A-1876-18T1

testator.'" In re Probate Will of Lee, 389 N.J. Super. 22, 38 (App. Div. 2006) (quoting In re Estate of Payne, 186 N.J. 324, 335 (2006)); see also In re Estate of Benner, 152 N.J. Super. 435, 441 (App. Div. 1977) (citing Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 564-66 (1962)). The court subsequently "consider[s] the circumstances surrounding its execution and other extrinsic evidence of intention." Vander Poel, 396 N.J. Super. at 226 (citing Payne, 186 N.J. at 335; Fidelity Union, 36 N.J. at 564–66; In re Trust Under Agreement of Voorhees, 93 N.J. Super. 293, 298–300 (App. Div. 1967)). Furthermore,

> [t]he trial court is not "limited simply to searching out the probable meaning intended by the words and phrases in the will." [Engle, 74 N.J. at 291.] Extrinsic evidence may "furnish[] information regarding the circumstances surrounding the testator [and] should be admitted to aid in ascertaining [the testator's] probable intent under the will." [Flowers, 58 N.J. at 260.] To be sure, the testator's own expressions of his or her intent are highly relevant. Id. at 262–63. Once the evidence establishes the probable intent of the testator, "the court may not refuse to effectuate that intent by indulging in a merely literal reading of the instrument." Id. at 260.
>
> [Payne, 186 N.J. at 335 (second, third, and fourth alterations in original).]

Judge Gummer reviewed the corporate documents and other documentary evidence in detail, in addition to her reliance on the testimony of those witnesses

6

she found credible. She reviewed DeConca's history with the organizations as well as, to the extent necessary, the activities of the organizations themselves.

Our "[c]ourts are enjoined to 'strain' toward effectuating the testator's probable intent 'to accomplish what he would have done had he envisioned the present inquiry.'" Lee, 389 N.J. Super. at 39 (quoting In re Estate of Branigan, 129 N.J. 324, 332 (1992)) (alteration in original) (citation omitted).

Judge Gummer properly focused on effectuating DeConca's probable intent. The "[e]xtrinsic evidence" she relied upon included correspondence with, and donations to, both organizations. Flowers, 58 N.J. at 260.

In light of the documents and the settlor's contacts with the national organization, the record supports the conclusion that an ambiguity existed as to which beneficiary should benefit. The judge's decision that the designated beneficiary was probably intended to be ANJ is well supported by the credible evidence in the record. See id. at 58 N.J. at 262-63; Vander Poel, 396 N.J. Super. at 226 (citing Payne, 186 N.J. at 335); In re Trust Created by Agreement Dated December 20, 1961, ex. rel. Johnson, 194 N.J. 276, 282, 286 (2008). The judge took into account DeConca's use of the Denville address in the trust document and for gift-giving during her life. DeConca was aware of the address of the

headquarters of the national association in Chicago, but did not use it for either purpose after 2009.

Judge Gummer's reliance on the credibility of the witnesses was unobjectionable. It is always the province of the factfinder to determine which witness is credible and to what extent. See Estate of Hanges v. Metropolitan Property & Cas. Ins. Co., 202 N.J. 369, 389 n.13 (2010).

We are satisfied that the trial court's assessment, based on the relevant legal precedent, of the settlor's probable intent was solidly grounded. Thus, we do not address AA's second point. Having affirmed Judge Gummer, there is no need for us to exercise original jurisdiction or remand for a new trial. Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION