ESTATE OF KENNETH HAMILTON, DECEASED by Mary H. Alvord, Executrix, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Hamilton v. Commissioner
Docket No. 7861-73.
United States Tax Court
T.C. Memo 1976-354; 1976 Tax Ct. Memo LEXIS 51; 35 T.C.M. (CCH) 1609; T.C.M. (RIA) 760354; November 22, 1976, Filed Harrison F. Durand, for the petitioner. Carolyn J. Chabora, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined an estate tax deficiency in the amount of $50,592.24. The issue for decision is whether a remainder interest created by an article in the will of decedent's uncle is includable in decedent's gross estate. All of the facts having been stipulated, they and the exhibits attached thereto are incorporated herein by this reference. Petitioner, Mary H. Alvord, is the Executrix of the Estate of Kenneth Hamilton, deceased. Her legal residence at the time she filed her petition was Washington, D.C.
Kenneth Hamilton died testate on May 2, 1969, a resident of New Jersey. The petitioner, Kenneth Hamilton, Jr. and Mary Hamilton are the *52 surviving daughter, son and widow of Kenneth Hamilton, deceased. Decedent had no other children. On June 30, 1970, petitioner filed a United States Estate Tax Return (Form 706) with the District Director of Internal Revenue, Newark, N.J. and paid the estate tax indicated thereon in an amount of $6,174.49. As part of Schedule H petitioner included a remainder interest in the estate of Alexander Torrance, deceased (hereinafter "the remainder interest"), and computed the alternate value of that interest to be $158,822.05. On Schedule H - page 21b - petitioner reported that a dispute existed between petitioner and The First National Iron Bank of New Jersey, the Successor Trustee of said Alexander Torrance, deceased, regarding whether Kenneth Hamilton was a tenant in common or a joint tenant with respect to the remainder interest. Petitioner included the following provision: Therefore this Item No, 1 of Schedule "H" of $158,822.05 is herein reported as taxable subject to the outcome of the dispute aforesaid. Should said dispute result adverse to this estate, the Executrix herein named hereby reserves the right to an appropriate refund of any Federal Estate Taxes paid. Decedent's *53 uncle, Alexander Torrance, died testate on November 18, 1950, a resident of New Jersey. His will dated May 3, 1937 and codicil thereto dated May 26, 1950, were admitted to probate by the Surrogate of Morris County, New Jersey. The third article of his will provides as follows: THIRD: All the rest, residue and remainder of my estate of whatsoever kind and wheresoever situate, I give, devise and bequeath to my wife, ANNA BUSHNELL TORRANCE, in trust, nevertheless, to invest, reinvest and keep the same invested and to pay the net income therefrom, periodically, at least quarterly, from the date of my death, to herself for her own use, benefit and behoof so long as she shall live. Upon the death of my said wife, ANNA BUSHNELL TORRANCE, or upon my own death if she should predecease me, or if we should both perish under circumstances which render it impossible to determine which of us predeceased the other, I give, devise and bequeath the said rest, residue and remainder of my estate to THE FIRST NATIONAL BANK OF MORRISTOWN, Morristown, New Jersey, IN TRUST, nevertheless, for the following uses and purposes: - (A) One-fifth thereof shall be made over, paid and delivered to my *54 brother, NORMAN F. TORRANCE, now residing at #131 East 15th Street, New York City, and I give, devise and bequeath the same accordingly. (B) Two-fifths thereof shall be made over, paid and delivered to my niece, AMY GORDON HAMILTON, now residing at 242 East 19th Street, New York City, and I give, devise and bequeath the same accordingly. (C) Two-fifths thereof shall be retained by my Trustee and invested, reinvested and kept invested and the net income therefrom paid periodically, to my sister, ETHEL CREIGHTON TORRANCE, now residing at Colorado Springs, Colorado, so long as she shall live. Upon the death of my said sister, ETHEL CREIGHTON TORRANCE, I give, devise and bequeath the corpus of this portion of my estate to my nephews, ALEXANDER T. TAFT, now residing in Cleveland, Ohio, and KENNETH HAMILTON, now residing at Forest Hills, Long Island, to be theirs absolutely and forever. I order and direct that if either of the above named, NORMAN F. TORRANCE or AMY GORDON HAMILTON, shall predecease me or surviving me shall predecease my wife, ANNA BUSHNELL TORRANCE, the share which the one so dying would have taken shall go to the heirs-at-law and next of kin of the one so dying *55 in the proportion and according to the statutes of the State of New Jersey governing the distribution of personal property in intestate estates in effect at the time of my death, regardless of whether the said share of my estate to which the one so dying shall be entitled shall be real or personal property. His codicil provides as follows: FIRST: Subject to the right of my wife, ANNA BUSHNELL TORRANCE, to use all of said items for and during her natural life, I give and bequeath upon the death of my said wife (or upon my death, if she shall predecease me) the following items to the following persons: (a) The portraits of my great uncle and great aunt, Frederick Lockwood and wife, to my nephew, FREDERICK P. TAFT, for life, and upon his death to FREDERICK LOCKWOOD TAFT, or to his issue, if he be deceased. (b) The gold watch and chain which came from my uncle, Alexander Torrance, to my nephew, ALEXANDER TORRANCE TAFT. (c) The round mirror which belonged to my grandfather, to my niece, AMY GORDON HAMILTON, for life and upon her death to my nephew, KENNETH HAMILTON, or to his issue, if he be deceased. SECOND: In all other respects I hereby ratify confirm and republish *56 my said Last Will and Testment dated May 3rd, 1937. Anna Bushnell Torrance, the wife of Alexander Torrance, died on November 25, 1962. Norman F. Torrance, a brother of Alexander Torrance, was born on July 14, 1868 and died on August 27, 1956. He never married nor had any children. Amy Gordon Hamilton, a niece of Alexander Torrance and the sister of Kenneth Hamilton, deceased, was born on December 26, 1891 and died on April 10, 1967. She never married nor had any children. Ethel Creighton Torrance, a sister of Alexander Torrance, was born on February 10, 1876 and was living at the date of commencement of this action but died on May 18, 1975. Alexander T. Taft, a nephew of Alexander Torrance, was born on November 30, 1902 and is still living. Kenneth Hamilton, deceased, was born on October 31, 1888. On March 10, 1972, respondent issued to petitioner a notice of deficiency in which respondent determined the value of "the remainder interest" to be $372,880.41 which determination resulted in a deficiency of $29,055. Petitioner consented to the assessment and collection of the $29,055 deficiency by signing Form 890 on March 17, 1972. Within the next 3 months, the *57 District Director issued to petitioner an examination report and an Estate Tax Closing letter and assessed the $29,055 deficiency. On January 29, 1973 the petitioner filed with the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. C-1757-72 a Complaint asking in the prayer thereof: 1. For a declaratory judgment construing the Last Will and Testament of Alexander Torrance, deceased. 2. That this Court determine that the remainder of the trust created by Article THIRD (C) of the decedent's Will upon the death of Ethel Creighton Torrance will be distributable one-half to plaintiff, as executrix of the Will of Kenneth Hamilton, deceased or to her successor and the remaining one-half to Alexander Taft but if he should predecease Ethel Creighton Torrance to the personal representative of his estate. 3. That the plaintiff have such other and further relief as may be just and proper and to these ends plaintiff applies for the issuance of an order to show cause.
In her complaint petitioner stated that she was Advised by her attorneys and believes that (a) if said remainder interest is found by this court to be vested, plaintiff will be able to obtain *58 a loan of a sum sufficient to pay said Federal Estate Tax deficiency and interest; but (b) if the said remainder is found by this court to have been contingent on kenneth Hamilton surviving Ethel Creighton Torrance, the estate of Kenneth Hamilton will probably be able to avoid the payment of said estate tax deficiency of $29,055 and obtain a Federal Estate Tax refund of $6,174.49 with interest, provided claim to such refund is made on or before June 25, 1973. Petitioner's attorneys filed a Memorandum on Behalf of Plaintiff in this proceeding which argued that the remainder interest of Kenneth Hamilton was vested. Attorneys for defendant, The First National Iron Bank of New Jersey, filed a memorandum on behalf of the bank in the State Court proceeding which argued that the testator Alexander Torrance probably intended the share of Kenneth Hamilton to devolve vertically to the heirs of Kenneth Hamilton. The guardian ad litem for Ethel Creighton Torrance, the life tenant of the trust created by Article THIRD (C) of the Last Will and Testament of Alexander Torrance, deceased, filed a report which argued that: Kenneth Hamilton's share should be distributed to his next of kin and *59 heirs-at-law. Alexander T. Taft's attorneys also filed a memorandum which argued that: The testator, Alexander Torrance, would have intended that the shares vest in the named beneficiaries and that the share of a deceased named beneficiary would be distributable to the deceased beneficiary's estate. During this period petitioner executed an Affidavit on Financial Circumstances of Mary Hamilton, Widow of Kenneth Hamilton, deceased, which she filed in these proceedings. It stated that her yearly income and financial savings were substantially less than the amount needed to sustain her and to provide adequately for her support and maintenance. Pursuant to an oral opinion submitted by Judge Scott M. Long on May 4, 1973, a declaratory judgment was entered on August 6, 1973 in the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. C-1757-72, which adjudged that: 1. Upon the death of Ethel Creighton Torrance, one-half of the principal of the trust fund is distributable to the heirs-at-law and next-of-kin of Kenneth Hamilton, deceased, in proportion and according to the statutes of the State of New Jersey governing the distribution of personal property *60 in intestate estates in effect at the time of the death of Alexander Torrance, deceased, namely: Mary Hamilton, widow, one-third; Kenneth Hamilton, Jr., son, one-third; Mary H. Alvord, daughter, one-third. 2. The remaining one-half of the principal of the trust fund is distributable to Alexander Taft if he shall survive Ethel Creighton Torrance, but if he shall predecease Ethel Creighton Torrance, to the heirs-at-law and next-of-kin of Alexander Taft in proportion and according to the statutes of the State of New Jersey governing the distribution of personal property in intestate estates in effect at the time of the death of Alexander Torrance. No appeal from the judgment entered in the State Court proceeding was made by any party to the State Court proceeding. The respondent was not a party to the State Court proceeding. In June of 1973 petitioner filed with the Internal Revenue Service, Newark, New Jersey an Amended United States Estate Tax Return which indicated an estate tax thereon of zero, a Claim for Refund in an amount of $6,174.49, and a Protest. On July 31, 1973 the respondent issued to petitioner a notice of deficiency in which the respondent denied the petitioner's *61 claim for refund. In May, 1937 Alexander Torrance executed his will which provided in Article THIRD (C) for a trust in which his wife was to have a life estate and after her death his sister, Ethel Creighton Torrance, was to have a life estate in two-fifths of the trust. After her death, the corpus of that portion was to go to two nephews of Alexander Torrance, Alexander T. Taft and Kenneth Hamilton, "to be theirs absolutely and forever." Kenneth Hamilton survived the wife of Alexander Torrance but predeceased the life tenant, Ethel Creighton Torrance. After having filed an estate tax return which included Kenneth Hamilton's remainder interest and accepting respondent's determination of a deficiency, petitioner then brought an action for declaratory judgment in the Superior Court of New Jersey which requested the court to construe the will of Alexander Torrance, deceased. After petitioner and various other parties filed briefs on the issue, pursuant to an oral opinion by Judge Scott M. Long, a declaratory judgment was entered in the Superior Court of New Jersey which adjudged that upon the death of the life tenant, Ethel Creighton Torrance, Kenneth Hamilton's remainder interest *62 would be distributable one-third each to Mary Hamilton, his wife; Kenneth Hamilton, Jr., his son; and Mary H. Alvord, his daughter. None of the parties to the State Court proceeding appealed that judgment. Although the taxability of property interests possessed by Kenneth Hamilton at his death is to be determined by federal law, the law of the State of New Jersey determines what property interests Kenneth Hamilton did possess. Morgan v. Commissioner,309 U.S. 78 (1940); Peoples Trust Co. of Bergen County v. United States,412 F.2d 1156 (3d Cir. 1969). Respondent argues that the decision entered in the Superior Court of New Jersey was contrary to New Jersey law because the court should have found that the remainder interest became indefeasibly vested in Kenneth Hamilton upon Alexander Torrance's death. Accordingly, respondent asks that we find the remainder interest includable in the Estate of Kenneth Hamilton and thus taxable under section 2033 of the 1954 Code. The resolution of the issue whether the remainder interest is includable in the Estate of Kenneth Hamilton is governed by the principles established by the United States Supreme *63 Court in Commissioner v. Estate of Bosch,387 U.S. 456 (1967), which specifically held at page 457: * * * where the federal estate tax liability turns upon the character of a property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination made of such property interest by a state trial court. Furthermore, the Supreme Court stated at page 465: It follows here then, that when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should afortiori not be controlling. * * * the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. Bernhardt v. Polygraphic Co.,350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). We find no merit in petitioner's argument that the use of *64 Bosch here will require us to extend the principles of that case. As in the cases under consideration by the Supreme Court in Bosch, the case at issue involves property interests under State law. Also like those cases, we are of the opinion that petitioner brought the New Jersey action for the purpose of directly affecting the federal estate tax liability. [1] As for petitioner's argument that the State Court proceeding was adversary in nature we note that the Supreme Court refused to make this a controlling factor in deciding that "proper regard" should be given to lower State court rulings. Judge Long in his oral opinion stated that Kenneth Hamilton's death prior to the life beneficiary's "raised the question of the taxability of whatever interest he might *65 have in this trust," and "that the Kenneth Hamilton estate [was] squarely faced with the question of tax liability." He then determined that there was a substantial question as to the interpretation of the will because of its language and because of decedent's death prior to the life beneficiary's. In interpreting the will he rejected the possibilities of intestacy and cross remainders: * * * it seemed clear to me that the purpose was to benefit them individually and in terms of an absolute gift. It is therefore my conclusion that these gifts in remainder to Kenneth Hamilton and Alexander Taft were vested. * * * It was an absolute gift * * * Despite this finding of vested bequests Judge Long decided that he should apply the rule of probable intent as enunciated in Fidelity Union Trust Co. v. Robert.[2] He stated that this case required him to determine what the testator would have done had he envisioned the present inquiry. He concluded that the testator would have wanted the bequest to go to the heirs and next of kin of decedent and thus pass outside of the will of Kenneth Hamilton. We note that each of the *66 parties who filed a memorandum in the State Court proceeding specifically referred to the financial burden to be borne by decedent's estate if the remainder interest were found to be includable. After reading their memoranda and examining the opinion we conclude that Judge Long based his analysis more upon a general concern for estate taxes that decedent's estate would incur if the remainder interest were declared to be vested than upon following New Jersey law. This judgment entered by the Superior Court of New Jersey, Chancery Division, does not alter the application of federal law to the present inquiry, Bosch,supra; therefore, we must of necessity construe the will of Alexander Torrance pursuant to what we conceive the New Jersey law to be rather than simply to accept the construction arrived at by the Chancery Division. We do this with some trepidation. In these circumstances, we are of the opinion that the New Jersey Supreme Court would have found Kenneth Hamilton's interest vested at the death of Alexander Torrance. Relying either on the canons favoring early vesting or determining the testator's "probable intent" or utilizing both approaches the *67 New Jersey Supreme Court would very probably have overruled the Chancery Court's determination.
There is no doubt that had Kenneth Hamilton survived the testator's sister, his aunt, he would have received his portion of the bequest "absolutely and forever." As in the case at issue, the question of whether a future interest is vested or contingent is rarely of significance except when determining whether the interest passes to the estate of the beneficiary. Cody v. Fitzgerald,2 N.J. 93, 65 A. 2d 750, 753 (1949). The New Jersey courts have consistently held that if the person who is given a future interest is in being, is ascertained and the gift is not made contingent upon an uncertain future event, the interest is vested in the beneficiary. Kahn v. Rockhill,132 N.J. E. 188, 28 A.2d 34 (Ch. 1942), affd. per curiam 133 N.J. E. 300, 31 A.2d 819 (E & A 1943). These rulings have rested on the general principles that an interest is to be construed as vested rather than contingent or, if contingent, vesting indefeasibly at the first opportunity unless such a construction would be inconsistent with the testator's intent. Neilson v. Bishop,45 N.J. E. 473, 17 A. 962 (Ch. 1889). *68 Cody v. Fitzgerald,supra.
At Alexander Torrance's death, Kenneth Hamilton was in being and ascertained. As to whether or not the testator made the devise contingent upon an uncertain future event we conclude that he did not. Petitioner argues that the testator would have done so, had he considered the possibility of Kenneth Hamilton's predeceasing the life tenant. However, we think that what he diddo is the test. On some of the bequests he placed the requirement that the beneficiary survive the life tenant, on Kenneth Hamilton's he did not. In Cody v. Fitzgerald,supra at 752, which is factually similar to the case at issue the testator left a life estate to his wife and "At her deth [sic] the children shall have share and share alike." The testator was survived by his wife and two sons, both of whom predeceased their mother, the life tenant. The court held that the remainder interests vested at the testator's death. Kenneth Hamilton's interest also vested at the death of the testator in this case. His death prior to his aunt's did not affect his interest, it merely made definite the uncertainty of his enjoyment of the bequest. *69 As for petitioner's argument that New Jersey no longer favors vesting of remainders we are not persuaded. So far as we can ascertain, the New Jersey Supreme Court has not overruled Cody or prior cases nor distinguished them. See Montclair Nat. Bank & Trust Co. v. Seton Hall Col. of M.,96 N.J. Super. 428, 233 A.2d 195, 199 (App. Div. 1967), cert. denied 50 N.J. 301, 234 A.2d 406 (1967), for a recent case that reiterates the proposition that the law of New Jersey favors the vesting of remainder interests. In Cody v. Fitzgerald,supra, the court noted that there was no evidence that the testator had a contrary intent as to the devolution of the property. Petitioner in her opening brief emphasizes this finding in Cody, we assume, for the purpose of distinguishing it factually from the case at issue and for the purpose of emphasizing her argument that the doctrine of probable intent should govern our determination. As we have already stated, Alexander Torrance apparently had no contrary intent as to the vesting of decdent's interest, and as for the doctrine of probable intent we find that it leads to the same conclusion. *70 Briefly stated the doctrine of probable intent, as evolved by the New Jersey Supreme Court, requires the court to determine the intent of the testator so as "to accomplish what he would have done had he envisioned the present inquiry." [3] This duty, however, is not without constraints. In In re Estate of Munger,63 N.J. 514, 309 A.2d 205, 209 (1973), the New Jersey Supreme Court stated: The obligation of a court, * * * is to effectuate the probable intent of the testator when consideration of the will as a whole together with extrinsic evidence, demonstrates, under all the circumstances, that a patent or latent ambiguity exists in the language used and such intent, overcoming the mere literal reading of the instrument, is thereby made "manifest." * * * This power must be most carefully exercised and should not be utilized unless the court is thoroughly convinced that it is required--the need for its exercise must be "manifest." Otherwise its exercise would amount to varying the terms of a will as distinguished from merely effectuating a testator's intent. * * * Petitioner, in her opening brief, spends *71 a great deal of time discussing this doctrine but very little time presenting evidence which indicates that an ambiguity exists in the will. She suggests that the testator did not consider the possibility of decedent's death before the life beneficiary's or consider that the Kenneth Hamilton estate might have to pay an estate tax on the bequest. Neither of these possibilities nor the family's relationships make Kenneth Hamilton's bequest ambiguous. The language in In re Estate of Schuhmann,125 N.J. Super. 56, 308 A.2d 375, 379 (App. Div. 1973), states our feelings concisely: The purpose correctly to be served is to effect the testator's intention where it has been expressed less than perfectly. It is not to effect a suppositious, unexpressed intention, no matter how logically and rationally that intention appears, nor how convinced we are that, had the testator the power to do it all over again, he would have done it a different way. * * * * * * For us to effectuate that intent by indulging a total fiction in terms of "construing" a will the meaning of which was perfectly plain, would be for us to legislate the statute of wills out of existence. Assuming *72 the possibility that Alexander Torrance's will was ambiguous, we are still of the opinion that his probable intent was that the remainder interest would vest at his death. The testator apparently knew how to provide alternative gifts if named legatees failed to survive the date of enjoyment. In Article THIRD (A) and (B) he imposed conditions of survivorship but made no such requirement as to (C), the paragraph establishing Kenneth Hamilton's remainder. This indicates to us that he did not intend such a condition as to that bequest. Our conclusion is bolstered by the language he used in his codicial dated 13 years after his will. For two of the bequests of personal property he imposed conditions of survivorship but for the third he did not. One of those bequests was to his sister for life and then to decedent whose issue were to take if he predeceased the life beneficiary. Alexander Torrance was particular in choosing the legatees of his will and codicil thereto as well as specific with respect to which legacies were conditioned on survivorship. There is no language requiring the survivorship of Kenneth Hamilton nor any external circumstances such as other sections of the will *73 or family relationships to indicate that the testator required him to survive the life tenant. Therefore, we find the remainder interest includable in his estate. In passing, we had this vagrant thought. If he had had recent changes in the estate tax law and other economic changes in mind, the doctrine of probable intent, carried to an extreme, might well lead to the conclusion that the putative testator would not have intended to draw a will at all. Decision will be entered under Rule 155. Footnotes
1. Paragraphs 9 and 19 of the complaint filed therein refer to the federal estate taxes and emphasize that if the remainder interest is found to be contingent rather than vested, then petitioner would be able to conclude the federal estate tax proceedings and "probably be able to avoid the payment of said estate tax deficiency of $29,055 and obtain a Federal Estate Tax refund of $6,174.49 with interest * * *."↩
2. 36 N.J. 561, 178 A. 2d 185↩ (1962).
3. Fidelity Union Trust Co. v. Robert,supra↩.